UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:25-CR-00053-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| JAKEEM JUMAR MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Government's motion to revoke the release order as to Defendant Jakeem Jumar Martin entered by the magistrate judge in the District of New Jersey [Doc. 11]. The Court referred the motion to the magistrate judge for a Report and Recommendation. The magistrate judge recommended detention [Doc. 45]. Defendant has objected to the Report and Recommendation. For the following reasons, the Defendant's Objections [Doc. 49] are **OVERRULED** and the Court will **ADOPT** the magistrate judge's Recommendation [Doc. 45] that Defendant should remain detained pending resolution of his criminal charges.

**I. Background**

Defendant is charged in the Eastern District of Tennessee with five counts of wire fraud in violation of 18 U.S.C. § 1343. [Doc. 3]. He was arrested on April 25, 2025, in the District of New Jersey and made his initial appearance before Magistrate Judge Michael Hammer on April 28, 2025 [Doc. 11, pg. 3-4]. Judge Hammer ordered Defendant's release, after which the Government moved this Court to stay the release and to revoke it. Defendant filed a response in opposition.

1

[Doc. 14]. The Court granted the stay and referred the Government's revocation motion to Magistrate Judge Wyrick [Docs. 13, 15].

Judge Wyrick recommends that the Court grant the Government's motion and keep Defendant detained [Doc. 45]. Defendant objects to the Recommendation on procedural and substantive grounds [Doc. 49].

## II. Legal Standard

When a "magistrate judge, or ... a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court" releases a defendant, the "court having original jurisdiction over the offense" may consider the Government's motion to revoke that release order. 18 U.S.C. § 3145(a)(1). Because Defendant was indicted in this district, this Court has original jurisdiction over the charged offense [Doc. 3]. The district court reviews the magistrate judge's release order de novo. *United States v. Tolbert*, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017). The Court may consider the evidence presented at the original detention hearing, and it may also consider other evidence at its discretion. *Id.*

## III. Analysis

### A. The Referral Order to Magistrate Judge Wyrick on the Government's Motion for Revocation of Pretrial Release

Defendant objects to this Court's referral of the Government's motion to Magistrate Judge Wyrick for a Report and Recommendation ("R&R"), arguing that the referral violates § 3145(a)'s requirement that a district court judge conduct the review, alters the parties' burden, and changes which judicial decision receives deference. But as the Sixth Circuit explained in an earlier appeal here, "district courts have broad powers to refer non-dispositive motions to magistrate judges for issuance of a report and recommendation and Martin cites no authority holding that referral of a § 3145(a) motion for a recommendation is not permitted under § 636(b)." [Doc. 17-2, pg. 6]. The

2

Case 2:25-cr-00053-DCLC-CRW   Document 54   Filed 11/18/25   Page 2 of 13
PageID #: 230

Sixth Circuit further observed that "although no circuit court has yet addressed that issue, … every district court that has considered the issue has held that nothing in § 3145 or any other source prohibits the referral of a § 3145(a) or § 3145(b) motion to a magistrate judge for a recommendation." *Id*. Because this Court has complied with § 3145(a) by reviewing de novo Magistrate Judge Hammer's release order, as opposed to a clearly erroneous review of the R&R, this objection is overruled.

      **B.**     **De Novo Review of Judge Hammer's Release Order**

The Court begins its analysis by determining whether Defendant poses a serious risk of flight. Because the crime charged—wire fraud—does not trigger a statutory presumption of detention, the Government is entitled to a detention hearing only if it shows that Defendant poses a serious risk of flight or otherwise satisfies one of the § 3142(f) conditions. 18 U.S.C. § 3142(f); *see United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (explaining that once a motion for detention is filed, the district court must first determine, by a preponderance of the evidence, that the defendant either falls within § 3142(f)(1) or presents a risk of flight or obstruction). A serious risk of flight is "a risk that the defendant will intentionally avoid appearing in court as required." *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021); *United States v. Abrego*, 788 F. Supp. 3d 937, 945 (M.D. Tenn. 2025). Though courts in the Sixth Circuit do not apply a rigid set of factors to evaluate a serious risk of flight, many have evaluated flight risk based on four key considerations: (1) the defendant's incentive to flee, (2) the defendant's ability to flee, (3) the defendant's ties to the jurisdiction and to the United States, and (4) the defendant's reliability and trustworthiness. *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *3 (E.D. Ky. Mar. 5, 2025). Courts also recognize that the use of aliases, unstable residential ties, attempts to evade arrest, or hidden assets can bolster

3

Case 2:25-cr-00053-DCLC-CRW   Document 54   Filed 11/18/25   Page 3 of 13
PageID #: 231

a finding of a serious risk of flight. *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005).

The Court agrees with Magistrate Judge Wyrick that the Government has presented sufficient evidence that Defendant poses a serious risk of flight. Although Defendant asserts that he is realistically facing only "three to four years in prison," he has been charged with multiple felony offenses carrying a statutory maximum sentence of twenty years imprisonment. [Doc. 45, pg. 9-10]. The potential for such a substantial sentence is, by itself, sufficient to establish an incentive to flee. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (holding that a defendant facing twenty years imprisonment has a "strong incentive to flee.").

The Government has also presented sufficient evidence that Defendant can flee, though this may be negated by an ICE detainer. In the four months before his detention, Defendant travelled internationally to the United States, Dominican Republic and Mexico. Further, the circumstances of Defendant's alleged crimes suggest that he has the means to flee. Judge Wyrick detailed this evidence in her Recommendation:

> [T]he Government provided evidence that, while working for his former employer, Defendant created ten fake businesses and then submitted fraudulent invoices for services that were allegedly performed by those fake businesses. In turn, he submitted those invoices to his former employer and allegedly obtained roughly half a million dollars in funds. Defendant was also allegedly able to obtain use of credit cards issued to his subordinates and charge expenses to those cards for his personal benefit. In short, Defendant was able to effectively use aliases to obtain a large amount of fraud proceeds which could be used to fund flight. *See United States v. Mendez-Santana*, 645 F.3d 822, 844 (6th Cir. 2011) (finding that the use of aliases strongly suggests a serious risk of flight). To-date, Defendant has provided no explanation of how the funds he allegedly obtained have been disposed of, and they were not adequately accounted for on Defendant's financial affidavit. Thus, there is reason to believe Defendant may have access to all or a portion of those funds.

4

Case 2:25-cr-00053-DCLC-CRW    Document 54    Filed 11/18/25    Page 4 of 13
PageID #: 232

[Doc. 45, pg. 9]. In sum, Defendant's recent history of international travel, use of aliases, and the reasonable, although conclusory,[1] assumption that he controls half a million dollars in alleged fraud proceeds are evidence that he possesses the ability to flee. *See United States v. Giordano*, 370 F. Supp. 2d 1256, 1268, 1271 (S.D. Fla. 2005) (considering the Government's proffer that defendant had amassed significant funds from his alleged fraud as a strong factor favoring a serious risk of flight finding, while also noting this proof was conclusory and the defendant likely spent most of the funds already). Defendant may be subject to mandatory immigration detention under the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E), though the Court has received no notice that there is indeed an ICE detainer against Defendant. But this plays little role in the flight risk analysis. *United States v. Abrego*, 788 F. Supp. 3d 937, 945 (M.D. Tenn. 2025) ("whether [defendant] may be detained by DHS after his release is of no moment" in determining flight risk). Because the Court cannot conclude either way that an ICE detainer will or will not occur, the Government has provided sufficient evidence that Defendant can flee.

It is undisputed that Defendant has no ties to the Eastern District of Tennessee. Defendant

---

[1] In his objection to the R&R, Defendant correctly states that the Court cannot base a flight-risk finding on conclusory allegations; the finding must be supported by concrete, reliable information. *See United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *1 (E.D. Ky. Mar. 5, 2025) ("The preponderance of the evidence standard requires that the risk be substantial, rather than speculative or theoretical."). This requirement can create tension in the case law on what information court may properly consider. *Compare United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) (treating a defendant's "hidden assets" as a relevant factor), *with United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021) (requiring "*evidence*, . . . not mere conclusory assertions…."). This raises the question: can the Government prove the existence of *truly* hidden assets via concrete evidence rather than speculation? The Court need not resolve that question because it does not need to consider any conclusory allegations about Defendant's alleged hidden funds when assessing risk of flight; Defendant's recent international travel and use of aliases are sufficient evidence that he possesses the ability to flee.

is a Canadian citizen who has never lived in the United States.² His immediate relatives are all Canadian citizens living in Canada. Before his detention, he lived with his grandmother and worked in Canada. And in the months that he has been detained, Defendant lost his job and will likely be unable to legally work in the United States upon release. This lack of ties is sufficient evidence for detention. *See, e.g., United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (defendant posed a serious risk of flight due to the lack of substantial ties to the community, his foreign contacts, and his employment history); *United States v. Ishraiteh*, 59 F.Supp. 2d 160, 162-63 (D. Mass. 1999) (a 20-year resident of the United States charged with fraud detained as he had extensive family and employment ties with foreign entities and no family ties to the United States or district of pending charges); *United States v. Epstein*, 155 F. Supp. 2d 323 (E.D. Pa. 2001) (Brazilian citizen arrested at a U.S. airport accused of defrauding his employer through wire communications detained due to his citizenship, lack of ties to the United States despite owning property in the country, and extensive ties to Brazil).

Defendant has presented some evidence of ties within the United States. He states that, if released, he intends to live with his girlfriend at her residence in Arizona. At the time of the Government's motion to stay and revoke Judge Hammer's release order, Defendant had been in this relationship for only four months, the couple met while on vacation, and they had never lived together. Since then, however, the relationship has continued for seven months, his girlfriend has no criminal history, is financially secure, can support Defendant if he could not work, and travelled to this District to testify before Magistrate Judge Wyrick that she is willing to serve as his third-

---

²     Defendant argues that the extradition treaty between Canada and the United States "provides a reliable mechanism for Mr. Martin's return should he flee." [Doc. 49, pg. 13]. An extradition treaty does decrease Defendant's incentive to flee to some degree, however the ability to recapture a defendant should they choose to flee does not impact their flight risk assessment.

party custodian. Further, several members of Defendant's family travelled to the United States to attend his detention hearing. While Defendant has no ties to this District, the evidence shows that he does have a connection to the United States through his girlfriend.

The final factor concerns Defendant's reliability and trustworthiness. There is no evidence that Defendant has made any efforts to evade arrest here or in connection with his unclear criminal history in Canada. Although the Court lacks sufficient information about his Canadian criminal history, his history of consistently appearing for prior court proceedings weighs against finding that he is untrustworthy or inclined to flee. The Government raised two allegations that Defendant has lied in relation to this case. First, that during an interview conducted by Eastman, "Defendant failed to provide direct responses to certain questions asked and then tried to attribute some of his obtuse answers to use of pain medication he was taking as the result of a car accident." [Doc. 45, pg. 5]. Second, that Defendant failed to report his employment with Eastman to Pretrial Services, although the Government acknowledges that this may have been due to a mistake by the pretrial services officer. Both allegations are weak evidence that Defendant is unreliable or untrustworthy.

Upon consideration of all the relevant facts, the Court finds that the Government has proven by a preponderance of the evidence that Defendant poses a serious risk of flight under 18 U.S.C. § 3142(f)(2). His incentive to flee, his ability to do so, and his lack of ties in this District all support this finding. In his objections to Magistrate Judge Wyrick's Recommendation, Defendant argues that Magistrate Judge Wyrick applied the wrong legal standard by failing to require proof of Defendant's volitional intent to flee. Yet the Recommendation correctly addressed the proper standard—Defendant's serious risk of flight—and did not rely on the lesser standard of risk of nonappearance. Further, while the Government presented some conclusory assertions, both Magistrate Judge Wyrick and this Court relied on concrete evidence is assessing flight risk [Doc.

7

45, pgs. 9-10 (considering the Defendant's Canadian citizenship, work history, travel history, ties to this District and the United States, and length of his potential sentence in determining his serious risk of flight)]. Defendant cites *United States v. Giordano* for the proposition that a court may consider a defendant's use of aliases and hidden assets in determining serious risk of flight [Doc. 49, pg. 9], and Magistrate Judge Wyrick appropriately factored those considerations into the analysis [Doc. 45, pg. 9]. No one factor is outcome-determinative in this analysis. That the Government presented no proof that Defendant ever failed to appear in court – an argument in his favor – that fact alone does not negate the overall showing that he poses a serious risk of flight.

Defendant also argues that his Canadian citizenship, standing alone, cannot justify detention, and that the R&R placed undue emphasis on his citizenship. Both parts of this argument are accurate, but Defendant overlooks that the R&R did not rely solely on his citizenship. Defendant cites to multiple cases in which Canadian or other foreign citizens were released, but those cases do not support a categorical rule that Canadian citizens must be released simply because of their nationality. Defendant correctly acknowledges that "[c]ourts must individually assess danger and flight risk." [Doc. 49, pg. 10 (citing *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010))]. Here the R&R properly conducted that type of individualized assessment and properly evaluated Defendant's overall flight risk.

The Court now moves to the second phase of the analysis, which asks whether Defendant should be detained.

A defendant should be detained if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether such conditions exist, courts consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence;

8

Case 2:25-cr-00053-DCLC-CRW   Document 54   Filed 11/18/25   Page 8 of 13
PageID #: 236

(3) the defendant's history and characteristics; and (4) the danger posed to the community by their release. 18 U.S.C. § 3142(g).

First, the nature and circumstances of the charged offense favor pretrial detention. The Indictment alleges that Defendant engaged in a complex scheme to defraud his former employer by creating multiple aliases and fake companies which he used to submit fraudulent invoices to his employer. Because of his fraud, the Government alleges, he obtained nearly half a million dollars. Along with the invoice scheme, he "persuade[d] subordinates to allow him to use their company-issued credit cards for fraudulent purposes and then, perhaps as a reward for their cooperation, he falsified those employees' timecards to reflect they were working at times when they were not present." [Doc. 45, pg. 11]. These are serious felony offenses and, if convicted, Defendant faces a substantial period of incarceration. As discussed above, the potential sentence gives Defendant a strong incentive to flee. *See, e.g., United States v. Dupree,* 833 F. Supp. 2d 241, 253–54 (E.D. N.Y. 2011) (finding bank fraud involving millions of dollars to be serious charges such that pretrial release not warranted).

Second, the weight of the evidence of Defendant's flight risk also supports detention. The Government introduced substantial evidence of Defendant's aliases used to further his fraudulent scheme, and fraudulent invoices paid out to him. Defendant argues that the R&R's reliance on Defendant's use of aliases in his fraudulent scheme was improper, as his aliases were not used to conceal his identity or evade authorities. But the mere use of aliases in the alleged offense is significant enough to raise concerns that a defendant may use an alias to flee. *See United States v. Luton*, No. 19-CR-00098-CMA, 2019 WL 2272792 (D. Colo. May 28, 2019) (evidence that the defendant used aliases to commit lottery fraud "adds weight to a determination that he poses a flight risk.").

Third, Defendant's history and characteristics suggest that he poses a serious flight risk. As described above, Defendant has no ties to this District, with his girlfriend's residence as the only tie to the United States. Defendant has no professional, employment, family, or community ties to Tennessee, outside the alleged fraud committed against his former Tennessee employer. *See United States v. Guerra-Rodriguez*, 59 F.3d 171 (Table), No. 95-5773, 1995 WL 378552, at *1 (6th Cir. June 23, 1995) (considering "lack of ties to Tennessee as [a] factor[ ] in evaluating the risk of flight" of a defendant).

Fourth, Defendant's potential danger to the community also supports detention. Although the charges against him are non-violent, the alleged conduct nevertheless caused substantial financial harm to his victim. Due to his immigration status, Defendant would have few, if any, lawful employment opportunities in the United States, if released. As Magistrate Judge Wyrick noted, "Defendant's financial crimes require 'nothing more than a computer or phone to commit' and Defendant was found to be in possession of multiple computers and phones upon his arrest, indicating that, at a minimum he had the means . . . to continue to perpetuate financial crimes against the community." [Doc. 45, pg. 12 (citing *United States v. Lee*, No. 3:19-CR-02-KAC-DCP, 2025 WL 2098739, at *3 (E.D. Tenn. July 25, 2025))]. "These circumstances raise significant concern that defendant's release will put the public at risk of defendant's resumption of fraud-related activity." *United States v. Otunyo*, No. CR 18-251, 2020 WL 2065041 (D.D.C. Apr. 28, 2020) (finding that the defendant charged with bank fraud, identify theft, and money laundering is a serious flight risk and must be detained).

Under the four § 3142(g) factors, Defendant's risk of flight is such that no reasonable conditions can assure his appearance in future proceedings.

### C. The Emergency Stay of Judge Hammer's Release Order

Defendant argues that the emergency stay of the release order violated his due process rights as the Court did not review the *Nken* factors in granting the stay. When a district court does not provide an explanation in its order granting a stay, an appellate court cannot conduct a proper review of the decision, and on appeal, the appellate court will remand the order to the district court to set forth its reasoning. *See Kicklighter v. United States*, 281 F. App'x 926, 932 (11th Cir. 2008) (remanding the district court's dismissal of a § 2255 motion for not properly explaining its reasoning); *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (remanding a district court's orders granting stays in a civil case). As this issue has been raised to this Court before consideration on appeal, the Court will now provide its reasoning for the stay.

In determining whether a stay should be granted, a court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (internal quotation marks omitted). The first two factors "are the most critical." *Id.* at 434. "While the party seeking a stay need not always establish a high probability of success on the merits, the party is still required to show, at a minimum, serious questions going to the merits." *Luxshare, Ltd. v. ZF Auto. US, Inc.*, 15 F.4th 780, 783 (6th Cir. 2021) (internal quotations omitted). The government, "as the movant[], bear[s] the burden of showing that a stay is warranted under the circumstances." *Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 568 (6th Cir. 2020) (citing *Nken*, 556 U.S. at 433-34).

The Government has met the first factor as it provided sufficient evidence that Defendant was a serious flight risk. In particular, it introduced evidence of Defendant's use of aliases in the commission of his alleged illicit activities, and evidence of his complete lack of ties to the Eastern District of Tennessee, both of which are highly relevant in determining whether a defendant poses a serious flight risk.

To the second and fourth factors, the Government and the public "could be irreparably injured if the Court does not issue a stay and Defendant flees." *United States v. Bothra*, No. 2:18-CR-20800, 2019 WL 9077345, at *1 (E.D. Mich. Feb. 12, 2019). Aside from the inability to prosecute if Defendant flees, the Government raises a suspicion that Defendant, who entered the United States with three phones and two computers, could commit further fraud with these electronics if released under Magistrate Judge Hammer's order, which does not restrict access to computers or electronic devices.

Finally, the Court recognizes that issuing the stay has harmed Defendant because he has remained detained during this period. Defendant notes in his objections that he lost his job in Canada while in custody. To some extent, however, this harm may be mitigated because any period of pretrial detention will be credited toward his sentence if he is ultimately convicted. *Id*. Considering the four *Nken* factors together, a stay was warranted to allow time for a de novo review of Magistrate Judge Hammer's release order.

### IV. Conclusion

Following a de novo review of Magistrate Judge Wyrick's Report and Recommendation [Doc. 45], the Court finds that she has properly analyzed the detention issues presented. Accordingly, the Court **ADOPTS** her recommendation as the judgment of the Court in this case

and the United States' motion for revocation of Magistrate Judge Hammer's release order [Doc. 11] is **GRANTED.**

Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge